IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUSSER'S INC., d/b/a | : | CIVIL ACTION |
| GENUINE TOBACCO COMPANY, | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 10-4355 |
| | : | |
| UNITED STATES, et al., | : | |
| Defendants | : | |

# M E M O R A N D U M

**STENGEL, J.** September 26, 2011

Musser's Inc., doing business as Genuine Tobacco Company, filed this action seeking a declaration that the Prevent All Cigarette Trafficking Act ("the Act") is unconstitutional. It also filed a motion for preliminary injunction against the defendants seeking to enjoin and restrain the enforcement of the Act pending final determination of this action. The defendant and various *amici curiae*[1] vehemently oppose the granting of this preliminary injunction. I held a hearing on the motion. For the following reasons, I will deny the motion in its entirety.

I.     BACKGROUND

From May 2003 to June 2010, the plaintiff operated an online retail store, selling tobacco products *via* the internet and the telephone to customers located in all fifty states.

---

[1] One of the briefs was submitted by the National Association of Convenience Stores, whose brief was joined by the New York Association of Convenience Stores. The second brief was submitted by the Campaign for Tobacco-Free-Kids, whose brief was joined by the American Cancer Society, the American Legacy Foundation, and the American Lung Association.

During that period, about 10-15% of its online sales was to our nation's military all over the world. The plaintiff shipped products to its customers by way of the United States Postal Service, the only permitted method of shipping to those stationed on military bases. The plaintiff contends that, before the Act, its online store had been "successful and profitable, offering a business model that afforded a competitive advantage over traditional brick-and-mortar retail stores that do not engage in telephone or online sales."

On March 31, 2010, Congress enacted the Act, a broad cigarette and smokeless tobacco tax law, which went into effect on June 29, 2010. The Act imposes restrictions on the sale of cigarettes and smokeless tobacco which are delivered to the purchaser, rather than "in-person" sales. The plaintiff complains that this law has had a dramatically negative effect on its business.

The Act echoes the Jenkins Act, passed in 1949, which required all "out-of-state cigarette sellers to register and to file a report with state tobacco tax administrators listing the name, address, and quantity of cigarettes purchased by state residents," in order to facilitate state and local collection of taxes from buyers. Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 987 (2010). In passing the Act, Congress found that the majority of internet and other remote sellers do not comply with the registration and reporting requirements of the Jenkins Act. See Prevent All Cigarette Trafficking Act, Pub. L. No. 111-154 § 1(b), 15 U.S.C. § 375 (2010). Billions of dollars of tax revenue have been lost each year due to remote sales of tobacco products. Id. It is interesting to note that mailing cigarettes without complying with the Jenkins Act has also resulted in

convictions for mail fraud. See United States v. Melvin, 544 F.2d 767 (5th Cir. 1977); United States v. Brewer, 528 F.2d 492 (4th Cir. 1975).

The Act requires that each seller of these tobacco products which are delivered must: (1) pre-pay[2] the excise or use taxes of the state and/or local government into which the products are delivered; and (2) comply with all of the regulatory and legal requirements that apply to the products in the state and locality where delivery is made. The Act also provides that all cigarettes and smokeless tobacco are "non-mailable" and "shall not be deposited in or carried through the mails." If any of these provisions are violated, the seller could be charged with severe criminal and civil penalties.

The plaintiff further complains that the Act makes it "cost prohibitive and effectively impossible" for it to be aware of and comply with the requirements of all fifty states and thousands of local jurisdictions. Even more troublesome for the plaintiff is the Act's prohibition on mailing tobacco products especially to the military who can only receive packages through the United States Postal Service. Accordingly, the plaintiff has had to cease operating its online retail business, and its entire business is in danger of closing.

In legislative findings set out in the statute, Congress found that the majority of internet and other remote sales of these products are made without payment of state and local taxes, without compliance with existing federal registration and reporting

---

[2] This "pre-pay" provision amends the Jenkins Act.

3

requirements, and without adequate precautions to prevent sales to minors. Congress also found that sales over the internet and through mail, fax, or phone orders make it cheaper and easier for children to obtain tobacco products, that criminals and terrorist groups profit from trafficking in untaxed cigarettes, and that billions of dollars of tax revenue are lost each year. See Prevent All Cigarette Trafficking Act, Pub. L. No. 111-154 § 1(b), 15 U.S.C. § 375 (2010).

To address these problems, Congress added provisions in the Act which make it unlawful to deliver cigarettes and smokeless tobacco through the United States Postal Service, and prohibit remote sales of these products unless applicable state and local taxes are paid in advance. The Act also imposes other requirements that are not challenged here, including new registration, record keeping, and age-verification requirements, and new penalties and enforcement mechanisms.

The plaintiff filed a two-count complaint against the United States and the Attorney General seeking declaratory relief. In Count 1, the plaintiff alleges that the Act violates the Due Process Clause because it forces remote sellers to comply with tax laws of foreign jurisdictions with which they do not have sufficient contact, thereby denying them the right to contest the Act's application. In Count 2, the plaintiff contends that the Act violates the Equal Protection Clause because it discriminates without a rational basis against military personnel by denying them the ability to make remote purchases of tobacco products for delivery.

At the hearing on the motion for preliminary injunction, Andrew Schenk, the plaintiff's Director of Operations since May 2003, testified that Musser's is a family-run business and in addition to its online store, operates supermarkets, two tobacco shops, and a hobby shop. See Notes of Testimony 2/08/11 at 7-8. One of the tobacco shops is located in Columbia, Pennsylvania, and the other is located in Millersville, Pennsylvania. Id. The online store sells moist tobacco products, leaf tobacco products, roll-your-own cigarette products, and some lighters and cigar-type accessories. Id. at 9. It does not sell cigarettes online, only smokeless tobacco and cigars. Id.

Mr. Schenk testified that after the Act became effective, the plaintiff attempted to comply with all of the Act's provisions, especially those governing age verification, private carrier delivery, and handling the various tax rates throughout the United States and the different taxing jurisdictions. Id. at 10-11. The plaintiff was able to find ways to satisfy the age verification and private carrier delivery provisions, but it was nearly impossible to find a resource to help comply with the taxation provisions of the Act. Id. at 12. The plaintiff's own accountants were unable to compile a list of all of the laws for each state and each taxing jurisdiction in each state. Id. at 13-18.

Mr. Schenk also testified that the only way to get the plaintiff's product to the military before the Act was through the United States Postal Service, which is now prohibited by the Act. Id. at 21. However, following a public outcry, the Postal Service modified its regulations and now allows for limited quantities of tobacco product to be shipped to military. Id. The shipment must be made in ten ounce packages, no more than

5

ten times in a thirty-day period, and the shipment must be made by a relative of that military member. Id. at 21; also at 51.

Mr. Schenk also stressed that the plaintiff has no physical property or sales personnel outside of the Commonwealth of Pennsylvania. Id. at 23. It also makes no use of billboards or catalogs outside of Pennsylvania. Id.

Mr. Scheck testified that the Act has significantly affected the plaintiff's business. Id. at 24. Because of the plaintiff's decreased income and sales, it has reduced employees' hours and transferred one employee to another part of the business, rather than laying its employees off. Id. Some of the employees left the company after their hours were reduced, but those vacated positions will not be filled. Id. at 25. The Act has also affected other parts of the business, such as paying rent for unnecessary space and paying for unnecessary telephone lines. Id. The store in Millersville is in danger of closing. Id. at 28.

Upon cross-examination, Mr. Schenk testified that the plaintiff added cigars and pipe tobacco products to the products sold online because those products are not affected by the Act, and they can be shipped through the United States Postal Service. Id. at 29.

## II.  STANDARD OF REVIEW

The court has wide discretion to grant a request for a preliminary injunction. Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010). To be successful, a plaintiff must demonstrate:  (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even

greater harm to the nonmoving party; and (4) that the public interest favors such relief. Child Evangelism Fellowship of New Jersey Inc. v. Stafford Tp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004) (citing KOS Pharms., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004)). A court must weigh all four factors, and the strength of one factor may affect the strength required of another factor. Marxe v. Jackson, 833 F.2d 1121, 1128 (3d Cir. 1987).

When considering the likelihood of success on the merits, courts generally do not go into the merits any farther than is necessary. Miller, 598 F.3d at 147. The irreparable harm factor is satisfied if the plaintiff "demonstrates a significant risk that it will experience harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 484-485 (3d Cir. 2000). The third factor undertakes to balance the hardships to the respective parties and ensures that the issuance of an injunction would not harm the non-moving party more than the moving party. Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998). Finally, the Third Circuit Court of Appeals has held that if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff. American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

### A.     First Factor – Likelihood of Success on the Merits

The plaintiff argues that there is a strong likelihood of success on the merits. It insists that the Act's requirement that sellers collect and remit state/local taxes even

7

though they do not have a sufficient nexus with the taxing jurisdiction violates the Due Process Clause.[3] That clause, according to the plaintiff, requires some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax. See Quill Corp. v. North Dakota, 504 U.S. 298, 306 (1992). In Quill Corp., the Supreme Court of the United States made clear that the due process standards addressed in International Shoe v. Washington, 326 U.S. 310, 310 (1945) should be used to determine whether a vendor's contacts with a foreign jurisdiction are so substantial that requiring compliance with that jurisdiction's tax requirements would not violate the vendor's right to due process. Id. at 307. The Court noted that due process requires a flexible inquiry into the nature and extent of a corporation's contacts with the forum that seeks to impose its authority on the corporation. Id. A state tax will satisfy due process as long as the out-of-state seller has minimum contacts with the jurisdiction such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Id. Ultimately, the Court found that, by sending mail-order catalogs and flyers, due process was satisfied because the company engaged in continuous and widespread solicitation of business within North Dakota, and purposefully directed its activities at the state's residents. Id. at 308.

      Here, the plaintiff insists that the Act violates due process because it forces remote sellers to identify, collect, and pay state sales taxes regardless of whether those sellers

---

[3] The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "no person shall … be deprived of life, liberty, or property, without due process of law." U.S. CONST., AMEND. V.

have a substantial nexus with the taxing jurisdiction.  The plaintiff cites a decision in a similar case from the Western District of New York which found that the plaintiffs, owners of a tobacco retail business, were likely to succeed on a due process claim:

> The unique problem presented in this case is that the PACT Act requires remote sellers who are not physically present in a taxing jurisdiction to collect state and local excise taxes on cigarettes and smokeless tobacco regardless of whether their existing contacts with that taxing jurisdiction rise to the level of minimum contacts necessary to satisfy due process considerations.  Perhaps even more troublesome is the fact that the Act makes the failure to collect and remit such taxes a federal felony punishable by up to three years of imprisonment.  If the statute is permitted to take effect, remote sellers will be required to pay taxes anywhere they ship their products even if they otherwise lack minimum contacts with that taxing jurisdiction.  And their failure to do so will subject them to criminal prosecution.

Red Earth LLC v. United States, 728 F. Supp. 2d 238, 248 (W.D. N.Y. 2010).  The plaintiff insists that the operation of its online website does not provide sufficient contacts to satisfy due process in every state and locality.  Because the Act disregards the "substantial nexus" requirement, the plaintiff insists, there is a likelihood that the plaintiff will succeed on its claim that the Act violates the Due Process Clause.  I do not agree.

The Red Earth court's analysis of the due process issue does not support the due process claim raised here.  The court analyzed the federal ban on untaxed interstate shipments as if that ban had been imposed by a state, acting unilaterally.  The Red Earth court further noted that principles of legislative due process require that there exist some definite link, some minimum connection, between a state and the person, property, or

9

transaction it seeks to tax.  It believed that under Quill Corp., due process precludes a state from requiring an out-of-state seller to pay sales taxes on products shipped into the state unless the seller was engaged in continuous and widespread solicitation of business within the state.

Nevertheless, the Act's tax-payment requirement is not being imposed by a state, acting unilaterally, but by Congress, and the legislative due process analysis must reflect the federal character of the legislation.  In regulating interstate commerce, Congress has for decades required interstate businesses to comply with state and local law.  For example, firearms distributors, online pharmacies, farmers, distributors of explosives, *inter alia*, have all been required by Congress to ensure that the sale of their products are in compliance with all state and local laws of the states in which they distribute/deliver their products.  Federal requirements like these have been found not to offend due process.  Interstate businesses are subject to the legislative jurisdiction of Congress, which is free to require compliance with state and local law.  See Int'l Shoe Co., 326 U.S. at 315 ("It is no longer debatable that Congress, in the exercise of the commerce power, may authorize the states, in specified ways, to regulate interstate commerce or impose burdens upon it.")  All interstate businesses are subject to the legislative jurisdiction of Congress who is free to require compliance with state law as a condition of engaging in interstate commerce.  Accordingly, the plaintiff has not demonstrated a likelihood of success on the merits of its claim that the Act violates due process.

However, I also note that the plaintiff does far more than "maintain a public

10

website." The court in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), used a "sliding scale" approach to the due process analysis of the contacts necessary for state jurisdiction over commercial activity on the internet:

> At one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.

Id. at 1124. Here, the plaintiff has provided enough information to show that it has sufficient contact with the states in which it does business. It does business over the internet in all fifty states. Its website does more than post information, or exchange information. Customers can place orders over the internet, pay for the products over the internet, and have those products delivered to the states in which they live. See N.T. at 62-63. State jurisdiction is proper when a party "purposefully availed itself of doing business" in that state. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003). The Third Circuit Court of Appeals noted that, "in Zippo, the defendant had purposefully availed itself of doing business in Pennsylvania when it 'repeatedly and

11

consciously chose to process Pennsylvania residents' applications and to assign them passwords,' knowing that the contacts would result in business relationships with Pennsylvania customers." Id. (quoting Zippo, 952 F. Supp. at 1126).  The court took special notice of the Zippo court's discussion of the pivotal importance of intentionality:

> When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.' . . . If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, . . . it could have chosen not to sell its services to Pennsylvania residents.

Id.  Thus, selling products over the internet and knowingly conducting business through the internet in a state is a sufficient contact to satisfy due process concerns.  The plaintiff's activities would be sufficient to render it subject to state jurisdiction, and it does not offend the Due Process Clause for the plaintiff to be subject to taxation in the states where it does business.

The plaintiff also challenges the "non-mailability" provision of the Act.  It concedes that because the Act does not impair fundamental rights or a protected class, it is subject to rational basis review.[4]  The plaintiff argues that the Act violates the Equal Protection Clause because its non-mailability provision prevents the military from purchasing tobacco products from remote sellers, but allows non-military to purchase

---

[4] The defendants note that rational basis review is not "a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).  Rather, statutes reviewed under this standard bear "a strong presumption of validity," and those "attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" Id. at 314-315.

12

them, presumably by way of private carriers like FedEx, etc.  The United States Postal Service is the only mail carrier permitted to ship packages to military bases.  Thus, rational basis review requires a court to consider whether the varying treatment of different groups of persons is so unrelated to the achievement of legitimate purposes, that it must be concluded that the legislature's actions were irrational.  Vance v. Bradley, 440 U.S. 93, 97 (1979).

The plaintiff insists that the Act must be struck down as unconstitutional because there is no rational basis for the Act's unequal treatment of the military.  According to the plaintiff, the Act's purported purposes, i.e., reducing sales of tobacco products to minors and illegal smuggling, are not furthered by precluding the military from purchasing tobacco products from remote retailers.

First, I find that the plaintiff lacks standing to bring this Equal Protection claim.  The plaintiff attempts to allege a violation of the rights of military personnel.   Military personnel, however, are not parties in this action, and the plaintiff is precluded from bringing a claim alleging a violation of someone else's rights.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (for standing, the plaintiff must, *inter alia*, have suffered an injury-in-fact, that is, an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical).

In the alternative, even if the plaintiff did have standing to bring this claim, it would still fail.  The Constitution vests Congress with plenary power over the postal system (Art. I, § 8), and Congress has long provided that specified items are "non-

13

mailable," including alcohol, firearms, poisons, inflammable materials, etc. See 18 U.S.C. § 1715-1717. If any reasonably conceivable set of facts could provide a rational basis for the Act to have added certain tobacco products to that list, then the Act must be upheld.

In enacting the Act, Congress found that remote sellers have been successful at eluding traditional enforcement measures by making their cigarette and smokeless tobacco deliveries by mail.[5] It further found that the use of mails to deliver tobacco products facilitated tax evasion, trafficking in untaxed cigarettes, criminal activity; and it made it easier for children to obtain these products, and led to unfair competition from sellers selling untaxed products when law abiding retailers were collecting local and state taxes. To combat these problems, the Act made cigarettes and smokeless tobacco a non-mailable matter through the United States Postal Service. Remedying of any of these congressional findings would be sufficient to provide a rational basis for the ban on the use of United States Postal Service to deliver these products. Accordingly, I find that the plaintiff has demonstrated no likelihood of success on the merits of its claim that the non-

---

[5] In fact, at the hearing on the motion, Mr. Schenk testified that before the Act, the plaintiff did nothing to ensure that its customers paid the appropriate taxes on the tobacco products to their local authority once they received the product. See N.T. at 32. A statement on the plaintiff's packing slip and e-mail receipts received by all customers stated that the plaintiff only collected taxes for the Commonwealth of Pennsylvania. Id. Upon cross-examination, Mr. Schenk agreed that this practice could have given the plaintiff a competitive advantage, i.e., selling products in other states where there was a tax but the plaintiff charged no tax. Id. And, he testified that the plaintiff could not possibly be certain that any purchaser in Pennsylvania or other state would not give the tobacco products to minors. Id. at 32. Mr. Schenk testified that there was never an attempt to pay a tax, and that the plaintiff had never paid a tax to another state for smokeless tobacco products. Id. at 34.

14

mailability provision of the Act violates the Equal Protection Clause.

### B. Second Factor – Suffer Irreparable Harm

The plaintiff insists that it will suffer imminent irreparable harm if injunctive relief is not granted. Deprivation of a constitutional right has been recognized as irreparable harm. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 880, 883 (3d Cir. 1997) (finding violation of voting and association rights constitutes irreparable harm); Swartzwelder v. McNeilly, 297 F.3d 228, 241 (3d Cir. 2002) (loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury). The plaintiff argues that because the Act's provisions violate the Due Process and Equal Protection Clauses of the Constitution, the plaintiff will experience irreparable harm, thereby satisfying the second factor. As shown above, however, the plaintiff has demonstrated no likelihood of success on the merits of the claims that the Act violates the Due Process or Equal Protection Clauses of the Constitution. Thus, this argument fails.

Further, I note that the plaintiff has made no plausible showing that it is impossible to comply with the tax laws applicable to its sales. Certainly, the initial gathering of information would be massive, but not impossible. Compliance with the laws of different jurisdictions is an administrative burden that is commonly borne by businesses that choose to engage in nationwide commerce.

The plaintiff next argues that the threat of substantial losses constitutes irreparable harm. The plaintiff began selling tobacco products online in 2003, but was required to stop selling online on the date the Act became effective, i.e., June 29, 2010. The plaintiff

argues that because the enforcement of the Act causes the loss of the plaintiff's online sales business and threatens to cause the destruction of its entire business, irreparable harm is presumed, and the second factor is satisfied. Again, I cannot agree.

Upon cross-examination, counsel for the defendants asked Mr. Schenk what the percentage of the plaintiff's total sales was comprised of smokeless tobacco. See N.T. at 29. Counsel clarified that Genuine Tobacco is the part of Musser's that sells smokeless tobacco, and that his question sought the percentage of smokeless tobacco sales comprising Musser's income or total sales for all of Musser's products. Id. at 30. Mr. Schenk responded that he did not know that percentage "off the top of [his] head." Id. He estimated that because Musser's has other businesses, the percentage of total sales comprised of smokeless tobacco would be very low. Id.

Upon re-direct examination, and after reviewing at counsel's request a profit and loss statement for the period beginning on October 1, 2010 and ending on December 31, 2010, Mr. Schenk testified that year-to-date internet sales for those three months was $15,679, compared to the previous year's figure of $633,444 for the same three months. Id. at 36. These figures reflected *only* Genuine Tobacco portion of Musser's. Id. at 38. These figures also do not reflect the newly-added cigar products offered online. Id. at 40.

Although insisting that the Act is causing substantial irreparable harm to its business, the plaintiff has provided no information about the percentage of Plaintiff Musser's sales affected by the Act. There is no indication that the Act has a substantial effect on the plaintiff's overall business. All that was offered into evidence was the

witness's acknowledgement that the percentage of sales affected by the Act was probably a very small percentage of Musser's total sales. Accordingly, I find that the plaintiff has failed to demonstrate that it would suffer irreparable harm if the requested injunctive relief were not granted.

### C. Third Factor – Balancing the Hardships to the Parties

The plaintiff argues that its business will be destroyed if the provisions of the Act are enforced because mailing tobacco products is an integral aspect of its business model. Without its online retail business, the plaintiff will not be able to satisfy its agreements with wholesale companies that are based upon a certain level of sales. If its business suffers, its employees will be harmed. Thus, the plaintiff insists, balancing the profound harm that it will experience with the minimal harm to the defendants should result in finding that this factor favors a preliminary injunction. I do not agree.

The plaintiff has not plausibly demonstrated the substantial and irreparable harm it alleges stems from the Act. On the other hand, the defendants have shown that an injunction would compromise important federal objectives, such as ensuring adequate precautions to protect our nation's children and halting profits from illegal sales to be used to finance other criminal activities. Accordingly, the plaintiff has failed to demonstrate that its alleged hardship approaches outweighing the legitimate federal objectives of the Act.

### D. Fourth Factor – The Public Interest

The plaintiff argues that when it demonstrates a likelihood of success on the merits

17

and an irreparable injury, the public interest will favor the plaintiff and the entry of an injunction. In fact, according to the plaintiff, the public interest generally favors constitutional protections even in the face of otherwise important public interests. Notwithstanding the plaintiff's excellent presentation on paper and at the hearing, I find that the public interest is clearly in favor of the Act and its purposes.

When it enacted the Act, Congress made several findings. It found that: (1) the majority of internet and other remote sales are made without payment of taxes, without compliance with existing federal registration and reporting requirements, and without adequate precautions to protect children; (2) untaxed cigarettes and smokeless tobacco provide a cheap supply of tobacco products that encourage underage demand and undermine tobacco control efforts; (3) billions of dollars in federal, state, and local tax revenues are lost each year; and (4) the profits from illegal sales are also used to finance other criminal activities and terrorist organizations. See Prevent All Cigarette Trafficking Act, Pub. L. No. 111-154 § 1(b), 15 U.S.C. § 375 (2010).

Congress also made clear the purposes of the Act: (1) to require internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers; (2) to create strong disincentives to illegal smuggling of tobacco products; (3) to provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling; (4) to make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities; (5) to increase collections of Federal, State, and local excise taxes on

cigarettes and smokeless tobacco; and (6) to prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal internet or contraband sales. See Prevent All Cigarette Trafficking Act, Pub. L. No. 111-154 § 1(c), 15 U.S.C. § 375 (2010).

There is no question that the public interest favors the purposes of the Act. The public has an interest in the just collection of local and state taxes on these products. The Act also favors the public interest in preventing sales of these products to minors, and preventing further criminal and terrorist behavior. It does not favor unfair competition from sellers who, by not taxing its products, are taking billions of dollars away from law-abiding retailers who do collect these taxes.

In conclusion, the plaintiff has not demonstrated that any of the factors supports the granting of the injunctive relief it seeks. Accordingly, I will deny the motion in its entirety.

An appropriate Order follows.