IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUSSER'S INC., d/b/a | : | CIVIL ACTION |
| GENUINE TOBACCO COMPANY, | : | |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 10-4355 |
| | : | |
| UNITED STATES, et al., | : | |
|     Defendants | : | |

M E M O R A N D U M

**STENGEL, J.**                                                             February 18, 2014

The plaintiff filed this action seeking a declaration that the Prevent All Cigarette Trafficking Act of 2009 ("the Act") is unconstitutional. After a hearing, I denied the plaintiff's motion for preliminary injunction which sought to enjoin and restrain the enforcement of the Act pending final determination of this action. The plaintiff filed a motion for reconsideration of that decision which I also denied. The defendants filed a motion to dismiss the complaint which, for the following reasons, I will grant in its entirety.

**I. BACKGROUND**

    **A. The Act**

On March 31, 2010, Congress enacted the Act, a broad cigarette and smokeless tobacco tax law, which went into effect on June 29, 2010. The Act imposes restrictions on the sale of cigarettes and smokeless tobacco which are delivered to the purchaser, rather than "in-person" sales.

The Act echoes the Jenkins Act, passed in 1949, which required all "out-of-state cigarette sellers to register and to file a report with state tobacco tax administrators listing the name, address, and quantity of cigarettes purchased by state residents," in order to facilitate state and local collection of taxes from buyers.  Hemi Group, LLC v. City of New York, 559 U.S. 1, 5 (2010) (citing 15 U.S.C. §§ 375-378).  In passing the Act, Congress found that the majority of internet and other remote sellers do not comply with the registration and reporting requirements of the Jenkins Act.  See Prevent All Cigarette Trafficking Act, Pub. L. No. 111-154 § 1(b), 15 U.S.C. § 375 (2010).  Billions of dollars of tax revenue have been lost each year due to remote sales of tobacco products.  Id.  It is interesting to note that mailing cigarettes without complying with the Jenkins Act has also resulted in convictions for mail fraud.  See United States v. Melvin, 544 F.2d 767 (5th Cir. 1977); United States v. Brewer, 528 F.2d 492 (4th Cir. 1975).

The Act requires that each seller of these tobacco products which are delivered must:  (1) pre-pay[1] the excise or use taxes of the state and/or local government into which the products are delivered; and (2) comply with all of the regulatory and legal requirements that apply to the products in the state and locality where delivery is made.  The Act also provides that all cigarettes and smokeless tobacco are "non-mailable" and "shall not be deposited in or carried through the mails."  If any of these provisions are violated, the seller could be charged with severe criminal and civil penalties.

---

[1] This "pre-pay" provision amends the Jenkins Act.

In legislative findings set out in the statute, Congress found that the majority of internet and other remote sales of these products are made without payment of state and local taxes, without compliance with existing federal registration and reporting requirements, and without adequate precautions to prevent sales to minors.  Congress also found that sales over the internet and through mail, fax, or phone orders make it cheaper and easier for children to obtain tobacco products, that criminals and terrorist groups profit from trafficking in untaxed cigarettes, and that billions of dollars of tax revenue are lost each year.  See Prevent All Cigarette Trafficking Act, Pub. L. No. 111-154 § 1(b), 15 U.S.C. § 375 (2010).

To address these problems, Congress added provisions in the Act which make it unlawful to deliver cigarettes and smokeless tobacco through the United States Postal Service, and prohibit remote sales of these products unless applicable state and local taxes are paid in advance.  The Act also imposes other requirements that are not challenged here, including new registration, record keeping, and age-verification requirements, and new penalties and enforcement mechanisms.

## B.  Facts[2]

From May 2003 to June 2010, the plaintiff operated an online retail store, selling

---

[2] This section is taken from my Memorandum denying the plaintiff's motion for preliminary injunction.  See Musser's Inc. v. United States, 2011 U.S. Dist. LEXIS 109629, 2011 WL 4467784 (E.D. Pa. Sept. 26, 2011).  In deciding a motion to dismiss, the district court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Accordingly, I will consider the testimony presented during the preliminary injunction proceedings as a matter of public record.

tobacco products *via* the internet and the telephone to customers located in all fifty states. During that period, about 10-15% of its online sales was to our nation's military all over the world. The plaintiff shipped products to its customers by way of the United States Postal Service, the only permitted method of shipping to those stationed on military bases. The plaintiff contends that, before the Act, its online store had been "successful and profitable, offering a business model that afforded a competitive advantage over traditional brick-and-mortar retail stores that do not engage in telephone or online sales."

At the hearing on the motion for preliminary injunction, Andrew Schenk, the plaintiff's Director of Operations since May 2003, testified that Musser's is a family-run business and in addition to its online store, operates supermarkets, two tobacco shops, and a hobby shop. See Notes of Testimony 2/08/11 at 7-8. One of the tobacco shops is located in Columbia, Pennsylvania, and the other is located in Millersville, Pennsylvania. Id. The online store sells moist tobacco products, leaf tobacco products, roll-your-own cigarette products, and some lighters and cigar-type accessories. Id. at 9. It does not sell cigarettes online, only smokeless tobacco and cigars. Id.

Mr. Schenk testified that after the Act became effective, the plaintiff attempted to comply with all of the Act's provisions, especially those governing age verification, private carrier delivery, and handling the various tax rates throughout the United States and the different taxing jurisdictions. Id. at 10-11. The plaintiff was able to find ways to satisfy the age verification and private carrier delivery provisions, but it was nearly impossible to find a resource to help comply with the taxation provisions of the Act. Id.

4

at 12.  The plaintiff's own accountants were unable to compile a list of all of the laws for each state and each taxing jurisdiction in each state.  Id. at 13-18.

Mr. Schenk also testified that the only way to get the plaintiff's product to the military before the Act was through the United States Postal Service, which is now prohibited by the Act.  Id. at 21.  However, following a public outcry, the Postal Service modified its regulations and now allows for limited quantities of tobacco product to be shipped to military.  Id.  The shipment must be made in ten ounce packages, no more than ten times in a thirty-day period, and the shipment must be made by a relative of that military member.  Id. at 21; also at 51.

Mr. Schenk stressed that the plaintiff has no physical property or sales personnel outside of the Commonwealth of Pennsylvania.  Id. at 23.  It also makes no use of billboards or catalogs outside of Pennsylvania.  Id.

Mr. Scheck testified that the Act has already had a dramatically negative effect on the plaintiff's business.  Id. at 24.  Because of the plaintiff's decreased income and sales, it has reduced employees' hours and transferred one employee to another part of the business, rather than laying its employees off.  Id.  Some of the employees left the company after their hours were reduced, but those vacated positions will not be filled.  Id. at 25.  The Act has also affected other parts of the business, such as paying rent for unnecessary space and paying for unnecessary telephone lines.  Id.  The store in Millersville is in danger of closing.  Id. at 28.

Upon cross-examination, Mr. Schenk testified that the plaintiff added cigars and pipe tobacco products to the products sold online because those products are not affected by the Act, and they can be shipped through the United States Postal Service.  Id. at 29.

The plaintiff further complains that the Act makes it "cost prohibitive and effectively impossible" for it to be aware of and comply with the requirements of all fifty states and thousands of local jurisdictions.  Even more troublesome for the plaintiff is the Act's prohibition on mailing tobacco products especially to the military who can only receive packages through the United States Postal Service.  Accordingly, the plaintiff has had to cease operating its online retail business, and its entire business is allegedly in danger of closing.

The plaintiff filed a two-count complaint against the United States and its Attorney General seeking declaratory relief.  In Count One, the plaintiff alleges that the Act violates the Due Process Clause because it forces remote sellers to comply with tax laws of foreign jurisdictions with which they do not have sufficient contact, thereby denying them the right to contest the Act's application.  In Count Two, the plaintiff contends that the Act violates the Equal Protection Clause because it discriminates without a rational basis against military personnel by denying them the ability to make remote purchases of tobacco products for delivery.

## II.  LEGAL STANDARD

As part of their response to the plaintiff's motion for reconsideration, the defendants filed a motion to dismiss the plaintiff's complaint in its entirety.  A motion to

dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips, 515 F.3d at 234-235. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

## III. DISCUSSION

### A. Count One – Violation of the Due Process Clause of the 5th Amendment[3]

In Count One, the plaintiff seeks a declaration that the Act is unconstitutional, insisting that the Act's requirement that sellers collect and remit state/local taxes even though they do not have a sufficient nexus with the taxing jurisdiction violates the Due Process Clause. That clause, according to the plaintiff, requires some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax. See Quill Corp. v. North Dakota, 504 U.S. 298, 306 (1992).

In Quill Corp., the Supreme Court of the United States made clear that the due process standards addressed in International Shoe v. Washington, 326 U.S. 310 (1945),

---

[3] The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "no person shall … be deprived of life, liberty, or property, without due process of law." U.S. CONST., AMEND. V.

8

should be used to determine whether a vendor's contacts with a foreign jurisdiction are so substantial that requiring compliance with that jurisdiction's tax requirements would not violate the vendor's right to due process.  Id. at 307.  The Court noted that due process requires a flexible inquiry into the nature and extent of a corporation's contacts with the forum that seeks to impose its authority on the corporation.  Id.  A state tax will satisfy due process as long as the out-of-state seller has minimum contacts with the jurisdiction such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  Id.  Ultimately, the Court found that, by sending mail-order catalogs and flyers, due process was satisfied because the company engaged in continuous and widespread solicitation of business within North Dakota, and purposefully directed its activities at the state's residents.  Id. at 308.

Here, the plaintiff maintains that the Act violates due process because it forces remote sellers to identify, collect, and pay state sales taxes regardless of whether those sellers have a substantial nexus with the taxing jurisdiction.  The plaintiff cites a decision in a similar case from the Western District of New York which found that the plaintiffs, owners of a tobacco retail business, were likely to succeed on a due process claim:

> The unique problem presented in this case is that the PACT Act requires remote sellers who are not physically present in a taxing jurisdiction to collect state and local excise taxes on cigarettes and smokeless tobacco regardless of whether their existing contacts with that taxing jurisdiction rise to the level of minimum contacts necessary to satisfy due process considerations.  Perhaps even more troublesome is the fact that the Act makes the failure to collect and remit such taxes a federal felony

9

> punishable by up to three years of imprisonment. If the statute is permitted to take effect, remote sellers will be required to pay taxes anywhere they ship their products even if they otherwise lack minimum contacts with that taxing jurisdiction. And their failure to do so will subject them to criminal prosecution.

Red Earth LLC v. United States, 728 F. Supp. 2d 238, 248 (W.D. N.Y. 2010), *aff'd*, 657 F.3d 138 (2d Cir. 2011). The Red Earth court's analysis of the due process issue does not support the due process claim raised here. That court analyzed the federal ban on untaxed interstate shipments as if that ban had been imposed by a state, acting unilaterally. It further noted that principles of legislative due process require that there exist some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax. The court believed that under Quill Corp., due process precludes a state from requiring an out-of-state seller to pay sales taxes on products shipped into the state unless the seller was engaged in continuous and widespread solicitation of business within the state.

    Notwithstanding the Red Earth court's analysis, the Act's tax-payment requirement is not being imposed by a state, acting unilaterally, but by Congress, and the legislative due process analysis must reflect the federal character of the legislation. In regulating interstate commerce, Congress has for decades required interstate businesses to comply with state and local law. For example, firearms distributors, online pharmacies, farmers, distributors of explosives, *inter alia*, have all been required by Congress to ensure that the sale of their products are in compliance with all state and

10

local laws of the states in which they distribute/deliver their products. Federal requirements like these have been found not to offend due process. Interstate businesses are subject to the legislative jurisdiction of Congress, which is free to require compliance with state and local law. See Int'l Shoe Co., 326 U.S. at 315 ("It is no longer debatable that Congress, in the exercise of the commerce power, may authorize the states, in specified ways, to regulate interstate commerce or impose burdens upon it.") All interstate businesses are subject to the legislative jurisdiction of Congress who is free to require compliance with state law as a condition of engaging in interstate commerce.

Here, it is important to note that the plaintiff does far more than "maintain a public website." The court in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), used a "sliding scale" approach to the due process analysis of the contacts necessary for state jurisdiction over commercial activity on the internet:

> At one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive websites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.

Id. at 1124.  Plaintiff Musser's has provided enough information to show that it has sufficient contact with the states in which it does business.  It does business over the internet in all fifty states.  Its website does more than post information, or exchange information.  Customers can place orders over the internet, pay for the products over the internet, and have those products delivered to the states in which they live.  See Notes of Testimony 2/08/11 at 62-63.  State jurisdiction is proper when a party "purposefully availed itself of doing business" in that state.  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003).  The Third Circuit Court of Appeals noted that, "in Zippo, the defendant had purposefully availed itself of doing business in Pennsylvania when it 'repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords,' knowing that the contacts would result in business relationships with Pennsylvania customers."  Id. (quoting Zippo, 952 F. Supp. at 1126).  The court took special notice of the Zippo court's discussion of the pivotal importance of intentionality:

> When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.' . . . If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, . . . it could have chosen not to sell its services to Pennsylvania residents.

Id.  Thus, selling products over the internet and knowingly conducting business through the internet in a state is a sufficient contact to satisfy due process concerns.  The plaintiff's activities are sufficient to render it subject to state jurisdiction, and it does not

12

offend the Due Process Clause for the plaintiff to be subject to taxation in the states where it does business. In fact, the plaintiff has failed to demonstrate that no set of circumstances exists under which the Act would be valid. Accordingly, because the plaintiff has failed to allege facts sufficient to show that it has a plausible claim for relief, I will grant the defendants' motion to dismiss Count One in its entirety.

### B. Count Two – Violation of the Equal Protection Clause

In Count Two, the plaintiff seeks a declaration that the Act is unconstitutional under the equal protection component of the Fifth Amendment Due Process Clause. It insists that the Act violates that component because it discriminates, without a rational basis, against military personnel by denying them the ability to make remote purchases of tobacco products for delivery. See Compl. ¶ 65.

Article III of the United States Constitution limits the power of federal courts to resolve cases or controversies. "A declaratory judgment or injunction can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met." St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. U.S. Virgin Islands, 218 F.3d 232, 241 (3d Cir. 2000). Requests for declaratory relief cannot hinge solely on hypothetical or contingent questions. Id. The case or controversy requirement is met when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. Courts ensure that the case or controversy requirement is met by following several justiciability doctrines, including standing, ripeness, mootness, the political question doctrine, and the

prohibition on advisory opinions. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 143 (3d Cir. 2009). These justiciability doctrines "state fundamental limits on federal judicial power in our system of government." Allen v. Wright, 468 U.S. 737, 750 (1984). "The Article III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." Id.; see also Sprint Communications Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008) (the "case-or-controversy requirement is satisfied only where a plaintiff has standing").

The doctrine of standing helps identify which disputes are justiciable under the case or controversy requirement. "As an incident to the elaboration of this bedrock [case or controversy] requirement, this court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). At a minimum, three elements are needed to establish constitutional standing under Article III: (1) injury-in-fact, (2) causation (or traceability), and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). An injury-in-fact is an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Id. at 560-561. Next, there must be a causal connection between the injury and the offending conduct. Id. Thus, the injury must be "fairly traceable" to the challenged action of the defendant. Id. Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561.

The fact that this action includes a request for declaratory judgment does not eliminate the requirement of standing — rather, "[a] declaratory judgment may issue only where the constitutional standing requirements of a justiciable controversy are satisfied." National Ass'n For Stock Car Auto Racing, Inc. v. Scharle, 184 Fed. Appx. 270, 274 (3d Cir. 2006); see also St. Thomas-St. John Hotel & Tourism Ass'n, 218 F.3d at 240 ("A declaratory judgment or injunction can issue only when the constitutional standing requirements of a case or controversy are met").

In the declaratory judgment context, the Third Circuit Court of Appeals has acknowledged that declaratory judgments are "frequently sought before injury has actually happened" and that in those cases standing requirements are satisfied when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

"A plaintiff seeking a declaratory judgment must possess constitutional standing but need not have suffered 'the full harm expected.'" Khodara Environmental, Inc., v. Blakey, 376 F.3d 187, 193 (3d Cir. 2004) (quoting The St. Thomas-St. John Hotel & Tourism Ass'n, 218 F.3d at 240). A plaintiff seeking a declaratory judgment "has Article III standing if 'there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id.; see also Davis v. FEC, 554 U.S. 724, 734 (2008) ("the injury required

15

for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct").

I also note that the plaintiff challenges the "non-mailability" provision of the Act. It concedes that because the Act does not impair fundamental rights or a protected class, it is subject to rational basis review.[4] The plaintiff argues that the Act violates the Equal Protection Clause because its non-mailability provision prevents the military from purchasing tobacco products from remote sellers, but allows non-military to purchase them, presumably by way of private carriers like FedEx, etc. The United States Postal Service is the only mail carrier permitted to ship packages to military bases. Thus, rational basis review requires a court to consider whether the varying treatment of different groups of persons is so unrelated to the achievement of legitimate purposes, that it must be concluded that the legislature's actions were irrational. Vance v. Bradley, 440 U.S. 93, 97 (1979).

The plaintiff insists that the Act must be struck down as unconstitutional because there is no rational basis for the Act's unequal treatment of the military. According to the plaintiff, the Act's purported purposes, i.e., reducing sales of tobacco products to minors and illegal smuggling, are not furthered by precluding the military from purchasing tobacco products from remote retailers.

---

[4] The defendants note that rational basis review is not "a license for courts to judge the wisdom, fairness, or logic of legislative choices." Statutes reviewed under this standard bear "a strong presumption of validity," and those "attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" FCC v. Beach Communications, Inc., 508 U.S. 307, 313-315 (1993).

First, I find that the plaintiff lacks standing to bring this Equal Protection claim. The plaintiff attempts to allege a violation of the rights of military personnel. Military personnel, however, are not parties in this action, and the plaintiff is precluded from bringing a claim alleging a violation of someone else's rights. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (for standing, the plaintiff must, *inter alia*, have suffered an injury-in-fact, that is, an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical).

In the alternative, even if the plaintiff did have standing to bring this claim, it would still fail. The Constitution vests Congress with plenary power over the postal system (Art. I, § 8), and Congress has long provided that specified items are "non-mailable," including alcohol, firearms, poisons, inflammable materials, etc. See 18 U.S.C. § 1715-1717. If any reasonably conceivable set of facts could provide a rational basis for the Act to have added certain tobacco products to that list, then the Act must be upheld.

In enacting the Act, Congress found that remote sellers have been successful at eluding traditional enforcement measures by making their cigarette and smokeless tobacco deliveries by mail.[5]  It further found that the use of mails to deliver tobacco

---

[5] In fact, Mr. Schenk testified that before the Act, the plaintiff did nothing to ensure that its customers paid the appropriate taxes on the tobacco products to their local authority once they received the product. See N.T. at 32. A statement on the plaintiff's packing slip and e-mail receipts received by all customers stated that the plaintiff only collected taxes for the Commonwealth of Pennsylvania. Id.  Upon cross-examination, Mr. Schenk agreed that this practice could have given the plaintiff a competitive advantage, i.e., selling products in other states where there was a tax but the plaintiff charged no tax. Id.  And, he testified that the

products facilitated tax evasion, trafficking in untaxed cigarettes, criminal activity; and it made it easier for children to obtain these products, and led to unfair competition from sellers selling untaxed products when law abiding retailers were collecting local and state taxes. To combat these problems, the Act made cigarettes and smokeless tobacco a non-mailable matter through the United States Postal Service. Remedying of any of these congressional findings would be sufficient to provide a rational basis for the ban on the use of United States Postal Service to deliver these products. Accordingly, because of the plaintiff's lack of standing to bring this Equal Protection claim, I will grant the defendants' motion to dismiss Count Two.

An appropriate Order follows.

---

plaintiff could not possibly be certain that any purchaser in Pennsylvania or other state would not give the tobacco products to minors. Id. at 32. Mr. Schenk testified that there was never an attempt to pay a tax, and that the plaintiff had never paid a tax to another state for smokeless tobacco products. Id. at 34.